John R. Tenney, J.
Petitioner, in an article 78 proceeding, seeks a review of the action of the Board of Contract and Supply of the City of Utica in awarding a garbage and refuse contract to the respondent, B & B Sanitation, Inc. He seeks an order setting aside the contract and awarding it to him. The city in its answer, seeks a dismissal of the proceeding and is joined in the motion by the corespondent. The motion to dismiss the petition is granted.
The underlying facts are somewhat bizarre and complicated. The three-year term of the former garbage contract was to expire on December 31, 1968. Early in December, the Utica Common Council passed a resolution authorizing the advertising of bids. A rider to the resolution provided that no contract could be awarded without the consent and approval of the Council. The respondent, Board of Contract and Supply, authorized the Secretary to advertise for bids on December 13, 1968. On December 27, 1968, the bids were opened, an there was only one bidder, the then contractor. On December 31, the board rejected that bid, and the old contract terminated.
*24 The board readvertised on January 7,1969, and the bids were opened on January 31, 1969. There were four bidders, and all bids were referred to the City Engineer for canvassing. Subsequently, on February 28, 1969, the bid was awarded to the second low bidder, Bentro Brothers. The first low bidder was rejected for reasons irrelevant to this proceeding. Petitioner was the third low bidder.
On March 28, 1969, a contract was executed between the city and B & B Sanitation, Inc. This corporation was formed by the Bentro Brothers, and they were its principal stockholders and officers. The contract award was not approved by the Common Council.
Petitioner contends that the award of the contract was illegal for two reasons: (1) It was not approved by the Common Council; (2) The assignment of the bid to B & B Sanitation, Inc. by the successful bidder, Bentro Brothers, was in violation of the General Municipal Law, and an unlawful variation of the specifications. Further, petitioner contends that the award of the contract was arbitrary and capricious in that (1) Bentro Brothers had no experience in the garbage collection business and he did; (2) Bentro Brothers were not responsible or qualified bidders since they did not have the necessary equipment and could not be ready for performance on the contract date, April 1, 1969'; (3) The city acted in bad faith because it gave allowances, special prices on equipment and generally ignored the specifications of the bid to assist B & B Sanitation, Inc. in its performance of the contract.
The legality of the contract will be considered first. Paragraph 40 of the specifications states: ‘ ‘ Prior to the award of any contract, the canvass of all bids shall be submitted to the Common Council for their consideration and approval, and no award shall be made until such approval is obtained.” This clause was copied exactly from the Common Council ordinance dated December 4,1968.
The awarding of contracts is the duty of the Board of Contract and Supply ‘ ‘ in accordance with regulations to be prescribed by general ordinance of the common council, to let to the lowest bidder * * * all contracts for the performance of any work ”. (Second Class Cities Law, § 120.)
The Common Council has the right to insist upon compliance with regulations prescribed in the enabling ordinance, but it may not appropriate authority to itself expressly delegated to the Board of Contract and Supply by the Legislature. (Matter of Mooney v. Cohen, 272 N. Y. 33, 39; Matter of Piazza v. Lindsay, 24 N Y 2d 186.) (Second Class Cities Law, §§ 41, 120; *25 General Municipal Law, § 103, Municipal Home Rule Law, arts. 2, 3.)
Insisting upon submission of the canvass for the consideration and approval of the Common Council before making an award is an improper invasion of the power of the Board of Contract and Supply. The peculiar wording of this particular clause “ no award shall be made until such approval is obtained ” is an attempt to limit the authority of the board. The Common Council may not substitute its judgment for that of the board.
Although not precisely in point, Judge Bergax in Matter of Piazza v. Lindsay (24 N Y 2d 186) expressed the principle applicable to the facts of this case that the statute “ expresses a central policy ” of fixing executive responsibility. Section 120 permits the Common Council to prescribe regulations for the awarding of bids, but fixes the responsibility for actually letting the bids to the Board of Contract and Supply. The board alone is given the power to “ reject all bids or proposals if in its opinion the lowest bid or proposal is excessive. ’ ’ The intention is clear that action on the bids is reserved exclusively to the board. The Common Council cannot assume any veto power over the canvass or the award of the contract.
The City Charter of the City of Utica, section 16-12 has adopted the precise wording of sections 120 and 121 of the Second Class Cities Law. The Council is thus further restrained in its conduct by the provisions of articles 2 and 3 of the Municipal Home Rule Law which prescribes the procedure for changing the charter.
There was no action by the Common Council under that law involved in this proceeding.
Since the Council had no authority to restrict the board as indicated and since its attempt to do so is clearly illegal, the action of the board in awarding the contract, without Council approval, is proper. The court does not pass on the right of the Common Council to insist upon the board’s following the correct bidding procedure.
Petitioner contends that the board acted in violation of section 109 of the General Municipal Law in entering into a contract with B & B Sanitation, Inc. instead of the successful bidder, Bentro Brothers.
This section provides that the contract may not be assigned without the previous written consent of the body awarding the contract. The underlying purpose of this section is to protect the municipality against brokerage activities in city contracts. (Ocorr & Rugg Co. v. City of Little Falls, 77 App. Div. 592, affd. 178 N. Y. 622.) There is no question of brokerage involved in this *26 transaction, although the contractor was a corporation and differed from the bidders who were a group of individuals. There is evidence that the board was satisfied that the corporation was a qualified party in every respect and that the city’s rights would not be impaired. The management, the stockholders and the directors were the same people as the successful bidders. The assignment did not occur until the contract was actually signed by the city, thus complying with the “ written consent ” requirement. Still, petitioner contends that this action, too, was arbitrary, capricious and unfair to him.
It is not the function of this court to substitute its judgment for that of the Board of Contract and Supply of the City of Utica. If its action can be supported upon any reasonable basis it must be sustained. (People ex rel. Hudson-Harlem Co. v. Walker, 282 N. Y. 400; Matter of Levy v. Board of Stds. & Appeals, 267 N. Y. 347; Matter of Diocese of Rochester v. Planning Bd. of Town of Brighton, 1 N Y 2d 508; Matter of Kayfield Constr. Corp. v. Morris, 15 A D 2d 373, 378.)
The court finds that the City Engineer made a very thorough canvass of the bids. This is established by the affidavits of the City Engineer and the Assistant Corporation Counsel and is not seriously disputed by the petitioner. The affidavits indicate an investigation was made of the capacity of Bentro Brothers as well as the other bidders, including petitioner, to perform the contract. The Bentro Brothers had ordered new equipment but had advised the board that it would not be delivered by the contract date. The board was advised that adequate temporary equipment was available until the new equipment was delivered. The canvass disclosed that the availability of equipment might have been a problem for the petitioner. In any event, there is no proof offered that the petitioner or any other bidder offered a clear alternative to the city that would warrant rejection of the Bentro Brothers as unqualified. Petitioner argues that prudence should have warned the board that Bentro Brothers would have problems with equipment or that knowing this it had agreed to make certain special arrangements which were illegal and improper. There is no proof that any such bargain was made by the board with the contractor at the time the contract was signed. Finally, the court cannot say as a matter of law that the board should have anticipated the inability of the contractor to furnish the equipment necessary to fulfill the contract.
The board had satisfied itself that Bentro Brothers and/or the B & B Sanitation, Inc. had adequate business experience, had sufficient equipment available and was financially able to *27 perform the contract. There are sufficient facts set forth in the affidavits to support this judgment.
The fact that the judgment may have been erroneous or naive would not justify the interference of the court in the board’s decision, in the absence of proof of illegality, fraud, collusion, corruption or bad faith.
“ Reasonable men may reasonably differ, but the agency or person saddled with the responsibility of decision, absent fraud, collusion, illegality or action clearly arbitrary and without foundation, should have its decisions upheld. Moreover, a presumption of regularity attends the action of the board, and it is incumbent upon the petitioner to overcome that presumption and establish the action to have been without reasonable foundation. Since the board had the information before it, we cannot say the action of the board is without some reasonable basis.” (Matter of Kayfield Constr. Corp. v. Morris, 15 A D 2d 373, 379.)
Although the entire procedure was conducted under unusual circumstances because of the urgent problems facing the city, this court cannot find as a matter of law evidence of bad faith, fraud, collusion, corruption or illegality present at the time of the board’s decision. (Picone v. City of New York, 176 Misc. 967; Matter of Caristo Constr. Corp. v. Rubin, 15 A D 2d 561, affd. 10 N Y 2d 538.)
Petitioner’s final argument is that after the commencement of work on the contract the city permitted variations in the contract and made certain beneficial arrangements with the contractor to assist him in fulfilling his responsibilities. He contends that this practice was unfair to the other bidders. It may have been unfair had it been agreed to at the time of the signing of the contract. There is no such evidence. The court does not pass on the propriety of these alleged actions by the city. If true, some legal remedy may lie against the city, but it is not properly before the court in this proceeding.
In view of the foregoing, the petition is dismissed without costs.